IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, THE CHICAGO | ) | |
| LABORERS' DISTRICT COUNCIL RETIREE | ) | |
| HEALTH AND WELFARE FUND, and | ) | |
| CATHERINE WENSKUS, Administrator | ) | |
| of the Funds, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 15 C 2333 |
| v. | ) | |
| | ) | Judge Ellis |
| HARD SURFACE CONTRACTORS, LLC, | ) | |
| an Illinois limited liability corporation, | ) | |
| RONALD D. JACKSON, JR., individually, | ) | |
| and HARD SURFACE SOLUTIONS, INC., | ) | |
| an Illinois corporation also D/B/A | ) | |
| SEAL-KOTE SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT IN SUM CERTAIN

Now come Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health

and Welfare Department of the Construction and General Laborers' District Council of Chicago

and Vicinity and Catherine Wenskus, Administrator of the Funds (collectively referred to

hereinafter as the "Funds"), by and through their attorney, Patrick T. Wallace, and hereby move

the Court for the Entry of Default Judgment in Sum Certain in favor of Plaintiffs and against

Defendants Hard Surface Contractors, LLC (hereinafter "Hard Surface" or the "Company") and

Ronald D. Jackson, Jr. ("Jackson"). In support of this Motion, Plaintiffs state as follows:

1.    Plaintiffs filed their Complaint on March 18, 2015 seeking to compel the Company to submit current benefit reports and contributions from the period of January 1, 2015 forward and to accelerate and confess judgment on a defaulted Installment Note.

2.    Summons and Complaint were served via Affidavit of Compliance for Service on the Illinois Secretary of State on corporate Defendant Hard Surface on March 31, 2015 and Summons and Complaint were personally served on individual Defendant Ronald D. Jackson, Jr. on March 30, 2015. See Docket Nos. 12 and 9.

3.    On March 31, 2015, Plaintiffs filed their First Amended Complaint which was noticed and served to Defendants via mail on the same day. See Docket Nos. 10 and 11.

4.    Hard Surface filed a bankruptcy petition and a Suggestion of Bankruptcy was filed with the Court on May 18, 2015.

5.    Plaintiffs obtained a judgment as to individual Defendant Jackson in the amount of $83,904.19 pursuant to Fed. R. Civ. P. 54(b) as to Count III of Plaintiffs' First Amended Complaint on September 11, 2015.

6.    Defendant Jackson filed a bankruptcy petition but his petition was subsequently dismissed with prejudice and the corporate bankruptcy was resolved without discharge.

7.    Plaintiffs filed their Second Amended Complaint on July 26, 2017 mailing notice to Defendants Hard Surface and Jackson.

8.    Plaintiffs filed a Stipulation of Dismissal as to the Third Defendant added in their Second Amended Complaint, Hard Surface Solutions, Inc., also d/b/a Seal-Kote Services. See Docket Entry No. 49.

9.    Accordingly, Defendants Hard Surface and Jackson remain as Defendants in the case and remain in default.

10.     Plaintiffs respectfully request that the Court enter Judgment in Sum Certain in favor of Plaintiffs and against Hard Surface on Count III of Plaintiffs' Second Amended Complaint in the amount of $83,904.19 representing $81,720.44 due on the defaulted Installment Note and $2,183.75 in attorneys' fees and expenses due at the time judgment was entered as to individual Defendant Jackson on Count III of Plaintiffs' initial Amended Complaint on September 11, 2015 as supported by that Motion. See Plaintiffs Motion for Entry of Default Judgment in Sum Certain Pursuant to Fed. R. Civ. P. 54(b) and For Order of Default filed on May 12, 2015 (Docket Entry No. ____).

11.     Plaintiffs further request that the Court enter judgment in favor of Plaintiffs and against Defendants Hard Surface Contractors, LLC and Ronald D. Jackson, Jr. on Counts I and II of Plaintiffs' Second Amended Complaint in the amount of $38,888.46 representing $21,829.01 due and owing on the audit of Hard Surface Contractors, LLC's books and records for the period of January 1, 2014 through December 31, 2014. See Affidavit of James Fosco, attached hereto as Exhibit A, ¶ 6, and $17,079.45 in attorneys' fees and expenses. See Declaration of Patrick T. Wallace, attached hereto as Exhibit B.

Respectfully submitted,

April 23, 2018                                     Laborers' Pension Fund, et al.

By: /s/ Patrick T. Wallace

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540
(312) 692-1489 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that he served this Motion for Entry of Default Judgment in Sum Certain via mail or the Court's electronic notification system as noted on April 23, 2018.

Mail

Ronald D. Jackson, Jr.
Hard Surface Contractors, LLC
511 N. Mason Ave.
East Wenatchee, WA 98802

Rodger Clarke
Clarke, Demeo & Beard, P.C.
2720 S. River Road, Suite 140
Des Plaines, IL 60018

Electronic Notification
John A. Lipinsky
Ross I. Molho
Clingen Callow & McLean, LLC
2300 Cabot Drive, Suite 500
Lisle, IL 60532
630-871-2600

/s/ Patrick T. Wallace

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND, )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, THE CHICAGO )
LABORERS' DISTRICT COUNCIL RETIREE )
HEALTH AND WELFARE FUND, and JAMES )
S. JORGENSEN, Administrator of the Funds, )
                                  )
            **Plaintiffs,** )     Case No.: 15 C 2333
                                  )
    v. )
HARD SURFACE CONTRACTORS, LLC, )     Judge Ellis
an Illinois limited liability corporation, )
RONALD D. JACKSON, JR., individually, )
and HARD SURFACE SOLUTIONS, INC., )
an Illinois corporation also D/B/A )
SEAL-KOTE SERVICES, )
                                  )
            **Defendants.** )

## AFFIDAVIT OF JAMES FOSCO

James Fosco, being first duly sworn on oath, deposes and states as follows:

1.      I am a Field Representative employed by the Laborers' Pension Fund and the

Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago

and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-

referenced action. My responsibilities include oversight of the collection of amounts owed by

Defendant Hard Surface Contractors, LLC (hereinafter "Hard Surface" or the "Company"). This

Affidavit is submitted in support of the Laborers' Funds' Motion for Entry of Default

Judgement. I have personal knowledge regarding the statements contained herein.

2.      On April 19, 2013, the Company signed an Independent Construction Industry

Collective Bargaining Agreement ("Agreement") with the Construction and General Laborers'



District Council of Chicago and Vicinity ("District Council") and Laborers' Local Union No. 118. A true and accurate copy of the Agreement is attached hereto as Exhibit A-1. Pursuant to the terms of the Memoranda, the Company is bound to the terms of the relevant collective bargaining agreements incorporated by reference in the Agreement and the Funds' respective Agreements and Declarations of Trust.

3. Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the District Council for union dues owed to the District Council.

4. The Agreement and the Funds' respective Agreements and Declarations of Trust to which the Company is bound require that the Company submit benefit reports and contribution payments by the tenth day of the following month. Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 10 percent of the principal amount of delinquent contributions, and interest at a rate of 12% compounded annually from the delinquency date forward. Contributions for Pension, Welfare and Training Funds are assessed liquidated damages in the amount of 20% for amounts due after June 1, 2007 if suit is brought to compel compliance with the contributions or if delinquencies are found pursuant to an audit. The Agreement and the Funds' respective Agreements and Declarations of Trust also obligate the Company to submit its books and records to the Funds for periodic audits to determine benefit contribution compliance. A copy of the relevant portions of the Agreement are attached as Exhibit A-2; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund are attached as Exhibit A-3; a copy of the relevant portions of the trust document of Amended Health and Welfare Department of the Construction and General Laborers' District Council are attached as Exhibit

2

A-4 and a copy of the relevant portions of the Laborers' District Council Retiree Health and Welfare Fund are attached hereto as Exhibit A-5.

5. The Company has failed to obtain and maintain a surety bond as required under the terms of the Agreement.

6. An audit of the Company's books and records for the period of January 1, 2014 through December 31, 2014 revealed the following unpaid contributions, dues, interest, liquidated damages, and audit costs as due and owing:

| | |
|---|---|
| Welfare Fund: | $13,123.71 |
| Liquidated damages: | 2,624.74 |
| Interest: | 5,931.61 |
| Retiree Welfare Fund: | 4,997.00 |
| Liquidated damages: | 999.40 |
| Interest: | 2,258.53 |
| Pension Contributions: | 13,307.80 |
| Liquidated damages: | 2,661.56 |
| Interest: | 6,014.81 |
| Training Fund: | 657.51 |
| Liquidated damages: | 131.50 |
| Interest: | 297.18 |
| Dues: | 1,748.46 |
| Liquidated damages: | 174.85 |
| LDCLMCC: | 157.80 |
| Liquidated damages: | 15.78 |
| Interest: | 71.32 |
| LECET: | 92.06 |
| Liquidated damages: | 9.21 |
| Interest: | 41.61 |
| CISCO: | 13.16 |
| Liquidated damages: | 2.63 |
| Interest: | 5.95 |
| IAF: | 92.06 |
| Liquidated damages: | 18.41 |
| Interest: | 41.61 |
| Audit Costs: | 1,338.75 |
| Less amount paid: | (35,000.00) |
| **TOTAL:** | **$21,829.01** |

A true and accurate copy of the January 1, 2014 through December 31, 2014 audit is attached hereto as Exhibit A-6. A true and accurate copy of my summary of amounts owed spreadsheet is attached hereto as Exhibit A-7.

FURTHER AFFIANT SAYETH NOT.

James Fosco

Subscribed and sworn to before me
this _____20_____ day of April 2018.

Notary Public

"OFFICIAL SEAL"
SUSAN M. DIFORTI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/05/2020

4



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-0369 • FAX: 630/655-0553

---

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

_(The body of this agreement is too faded to transcribe reliably.)_

Date: _____ 19__ , 20 13

ACCEPTED:

Laborers' Local Union No. 118

by: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

by: _____

by: _____

For Office Use Only:

FIRM: Hard Surface Contractors LLC

by: _____

(Sign Here and Title)

_____

10480 268th Ave

Trevor WI 53179

262 257 0500

WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

EXHIBIT
A-1

JUNE 1, 2013 TO MAY 31, 2017

# AGREEMENT

between the

CHICAGO AREA INDEPENDENT
CONSTRUCTION ASSOCIATION

and the

CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL
OF CHICAGO AND VICINITY

1



EXHIBIT

A-2

## Article 2
## UNION SECURITY

All new Employees shall be required to join the Union after the expiration of seven (7) days of employment or seven (7) days after the execution date of this Agreement, whichever is later, and shall remain members of the Union in good standing as a condition of continued employment.

Good standing shall mean payment of the initiation fees and both working and non-working dues uniformly required as a condition of acquiring or retaining membership in a Local Union.

Employees covered by this Agreement at the time it is signed, and who are members of the Union at that time, shall be required as a condition of continued employment, to continue membership in the Union for the duration of this Agreement.

Employees covered by this Agreement at the time it has been signed, and who are not members of the Union at that time shall be required to join the Union seven (7) days after the date of execution of this Agreement and remain members of the Union in good standing for the duration of this Agreement.

## Article 3
## CHECK-OFF & DUES DEDUCTIONS

Paragraph 1. Employers also agree to deduct from the net earnings payable to an Employee covered by this Agreement, initiation fees and quarterly Union dues insofar as permitted by state and federal laws upon receipt and in accordance with a duly executed authorization form from the Employee. Said authorization form shall not be revocable for a period of more than one (1) year or prior to the termination date of this Agreement, whichever occurs sooner.

Paragraph 2. All Employers covered by this Agreement shall deduct from the wages of Employees covered

6

by said contract, working dues in the amount of 3.25% of gross wages or such amount approved by the Union for each hour worked and shall remit monthly to the Union office the sums so deducted, together with an accurate list of Employees from whose wages said dues were deducted and the amounts applicable to each Employee, not later than the 10th day of the month next following the month for which such deductions were made. Dues remittance reports shall include a report of the hours worked and wages earned by each Laborer. Employers who fail to timely remit Union dues shall be assessed an additional ten percent (10%) liquidated damages.

Paragraph 3. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written assignments from each Employee on whose account such deductions are made, which assignment shall not be revocable for a period of more than one (1) year, or prior to the termination date of this Agreement, whichever occurs sooner.

Paragraph 4. The Union agrees that it will indemnify and hold harmless the Employer from any and all claims, suits, causes of action, or otherwise, as regards the creation and administration of the dues check-off established by this Article and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

Paragraph 5. Should any Employer fail to remit dues to the Union as required under this Agreement, the Employer shall be liable for and pay all costs of collection, including reasonable audit expenses and reasonable attorney fees and costs. The Union may file suit, or remove employees that it represents, or both, for non-remittance or underpayment of dues by an Employer.

Paragraph 6. Laborers' Political League. The Employer will deduct an amount designated by the Union for each hour that an employee receives wages under the

7

terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month for the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue standard.

## Article 4
## SUBCONTRACTING

Paragraph 1. On work covered by this Agreement, the contractor or subcontractor agrees to see that all subcontractors on work within the Union's jurisdiction on this job site adhere to the wages and fringes contained in this Agreement when the subcontract is let by the contractor or subcontractor. If, upon the Union's request, the subcontractor chooses to sign a current labor agreement with the Union (although such signing might not be required under Paragraph 1), then the contractor shall be relieved of any liability under this Paragraph 1.

Paragraph 2. The Employer agrees that it will not contract or subcontract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure or other work, except to a person, firm or corporation that is party to the applicable collective bargaining agreement with the Union.

Paragraph 3. If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who

8

is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or in addition to any remedies available under this Article, the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund as provided in Article V of this Agreement.

## Article 5
### WAGES

Paragraph 1. The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2013 to and including May 31, 2017, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include a total economic increase of $1.90 per hour effective June 1, 2013 to May 31, 2014 to be allocated between wages and fringe benefits by the Union in its sole discretion, which includes the dues deduction; June 1, 2014 to May 31, 2015, $2.00 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2015 to May 31, 2016, $2.05 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2016 to May 31, 2017, $2.10 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion. The foregoing allocations may include allocations to LECET and LDC/LMCC.

Dosimeter Use. A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

9

Power Pac. When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

Apprentice wages. Apprentice Laborers shall be paid according to the following schedule:

Apprentices (1st 6 months) . . . . . . . . 60% of base rate;
Apprentices (2nd 6 months) . . . . . . . 70% of base rate;
Apprentices (3rd 6 months) . . . . . . . . 80% of base rate;
Apprentices (4th 6 months) . . . . . . . . 90% of base rate;
Apprentices (after 24 months) . . . . . 100% of base rate;

Should the Union enter into an agreement with the Builders Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Illinois Road and Transportation Builders Association, the Underground Contractors Association, the Fox Valley General Contractors Association, the Lake County Contractors' Association, or the Contractors Association of Will and Grundy Counties that provides an annual total economic increase different than the annual total economic increase set forth in this paragraph, then such rates shall be incorporated into the applicable portion(s) of this Agreement that correspond to the trade and geographic scope of such association agreement.

Paragraph 2. WELFARE: Beginning the period from June 1, 2013 to May 31, 2014, the Employer agrees to make Health and Welfare contributions of $13.38 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $13.38 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods; June 1, 2014 to May 31, 2015; June 1, 2015 to May 31, 2016; June 1, 2016 to May 31, 2017; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare

10

and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

Paragraph 3. PENSION: Beginning June 1, 2013 the Employer agrees to make a pension contribution of $9.52 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $9.52 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods; June 1, 2014 to May 31, 2015; June 1, 2015 to May 31, 2016; June 1, 2016 to May 31, 2017; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The total economic increase shall be allocated between wages and fringe benefits and other funds by the Union in its sole discretion, except that the Union agrees that it shall allocate sufficient funds to the pension fund of the Union from the total economic package increases set forth above in each year of this agreement such that the pension fund remains in green status as defined by the Pension Protection Act of 2006, or any successor legislation.

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

11

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

12

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article 3.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Paragraph 4. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations com-

13

pared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

Paragraph 5. Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

Paragraph 6. Section 415 Excess Benefit Fund. A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any

14

such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

Paragraph 7. The Employer agrees to be bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 8. The Employer agrees to be bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 9. SUPERVISORS: To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of this Article for this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of this Article.

Paragraph 10. Special Rules for Bonding. An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds

15

shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

Paragraph 11. Withdrawal of Employees. If the Employees are withdrawn from any job in order to collect contributions to the Laborers' Health and Welfare, Pension and/or Apprenticeship and Training Funds, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days' written notice of intention to remove employees from the job is given to the Employer by the Union. These lost time amounts may be collected only from the contractor with whom the Union has a dispute and the Union shall not pursue collection efforts from any other entity. This lost time liability shall not apply if the Employer has made payment on behalf of the affected employees to another fringe benefit fund under a MARBA labor agreement or a labor agreement of a union affiliated with the Building and Construction Trades Department, AFL-CIO.

## Article 6
## BONDING

Paragraph 1. All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement. The bond shall be placed in the custody of the Pension and Welfare Funds.

Paragraph 2. If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond

16

shall be increased to $25,000. If the Employer employers twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

Paragraph 3. Contractors shall be required to obtain an appropriate bond within thirty (30) days of executing this Agreement, which bond may also be posted in cash. Should the Employer fail to comply with the provisions of Paragraphs 1-3 of this Article, the Union may withdraw its employees or strike until such compliance occurs, and the Employer shall further be liable for all costs, including attorneys fees, incurred in enforcing these provisions.

Paragraph 4. The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor; and

(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

Paragraph 5. Withdrawal of Employees. If the Employees are withdrawn from any job in order to ensure compliance with the provisions of this Article, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days' written notice of intention to remove employees from the job is given to the Employer

17

by the Union. These lost time amounts may be collected only from the contractor with whom the Union has a dispute and the Union shall not pursue collection efforts from any other entity. This lost time liability shall not apply if the Employer produces the required bond before expiration of the 2-day notice period.

## Article 7
## INDUSTRY FUND

Paragraph 1. Each Employer shall pay into an industry advancement fund the amount of eight cents ($.08) for each hour worked for the Employer by those of his Employees covered by this Agreement. This payment shall be collected for and remitted only to funds as provided under written agreements between an employer association and the Union.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of seven cents ($.07) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Paragraph 2. The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

18

Paragraph 3. Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this Article are in fact made by Employers bound by this Agreement.

## Article 8
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

Paragraph 1. Except as provided under paragraph 2 below, wages must be paid by payroll check and shall include a stub or statement showing the number of straight time and overtime hours worked and rate of pay. Failure on the part of the Employer to have sufficient funds at the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Grievance Committee shall assess such Employer a sum equal to not less than the expense incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

Paragraph 2. Direct Deposit. In lieu of paying wages by payroll check, the Employer may make payment by electronic bank draft if the employee voluntarily accepts such alternate method of payment. The Employer shall not mandate electronic banking as a condition of employment. Electronic wage payments must be transferred to the employee's bank account no later than the employee's regular pay day and at no cost to the employee. If payment is made by electronic bank draft, the Employee must also be provided a record of hours worked, rates of pay, and deductions made, at the same time and containing the same information as if wages were paid by payroll check.

If full wages are not timely transferred to the employee's account, the Employer shall pay the employee an additional four (4) hours pay for each day or portion thereof until full wages are received. Employers who violate the provisions of these paragraphs shall be denied the use of electronic banking for wage payments.

# RESTATED AGREEMENT

### AND

# DECLARATION OF TRUST

### CREATING

# LABORERS' PENSION FUND

With Amendments Through
May 31, 2002



EXHIBIT
A-3

(b)    To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)    To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.    IN GENERAL.    In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work. No

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the provisions of a Collective Bargaining Agreement or Participation Agreement and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Fund. The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.    REPORT   ON   CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such

-27-

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VIII

### FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM

Section 1. FILING OF A CLAIM. Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

-28-

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers.** New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years,

1

4. **Employers Subject to Special Audits.** At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers.** If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers.** Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers.** Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

2

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
CREATING LABORERS' PENSION FUND

WHEREAS, Article XII of the Restated Agreement and Declaration of Trust ("Trust Agreement") of the Laborer's Pension Fund (the "Fund") provides that the Board of Trustees have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching

1

themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

The following is added as Section (4) to Article VII, "Funding Pension Plan Benefits":

"Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)    EMPLOYER OWNED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)    EMPLOYER OPERATED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)  PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund.  The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)  MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

*Charles Cohen* 9-18-06
**CHARLES COHEN**    DATE

*Joseph Coconato* 9/18/06
**JOSEPH COCONATO**    DATE

*Alan C. Esche* 9/18/06
**ALAN ESCHE**    DATE

*James P. Connolly* 9/18/06
**JAMES P. CONNOLLY**    DATE

*Robert G. Krug* 9/18/06
**ROBERT G. KRUG**    DATE

*J. Michael Lazzaretto* 9/18/06
**J. MICHAEL LAZZARETTO**    DATE

*Richard E. Grabowski* 9/18/06
**RICHARD E. GRABOWSKI**    DATE

*Frank Riley* 9/18/06
**FRANK RILEY**    DATE

*David H. Lorig* 9/18/06
**DAVID H. LORIG**    DATE

*Larry Wright Jr.* 9/18/06
**LARRY WRIGHT**    DATE

*Gary Lundsberg* 9/18/06
**GARY LUNDSBERG**    DATE

*Jeff M. Ziemann* 9-18-06
**JEFF ZIEMANN**    DATE

4

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003

1



## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1. IN GENERAL. In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

# ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

2

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers.** New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits.** At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers.** If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers.** Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers.** Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

# AMENDMENT TO THE
## RESTATED AGREEMENT AND DECLARATION OF TRUST
### OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

1

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

The following is added as Section (4) to Article VI, "Employer Contributions":

"Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)    EMPLOYER OWNED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)    EMPLOYER OPERATED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION. The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS. The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

## III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

CHARLES J. GALLAGHER     DATE

JAMES P. CONNOLLY     9/19/06 DATE

ALAN ESCHE     9/19/06 DATE

RANDY DALTON     9/19/06 DATE

RICHARD E. GRABOWSKI     9/19/06 DATE

MARTIN FLANAGAN     9-19-06 DATE

DAVID H. LORIG     9/19/06 DATE

LIBERATO NAIMOLI     9/19/06 DATE

DENNIS MARTIN     9/19/06 DATE

SCOTT PAVLIS     9/19/06 DATE

TIM J. SCULLY     9/19/06 DATE

FRANK RILEY     9/19/06 DATE

4

# AGREEMENT
# AND
# DECLARATION OF TRUST
# OF THE
# CHICAGO LABORERS'
# DISTRICT COUNCIL
# RETIREE HEALTH AND
# WELFARE FUND

Effective as of
June 1, 2014



weighted) of Union Trustees and Employer Trustees;

(e)     If a Trustee is absent from a meeting of the Board of Trustees, he may, but need not, cast a vote on any matter by written instrument filed with or telegram addressed to the Board of Trustees; and

(f)     If a Trustee is absent from any meeting, then, to the extent permitted by law, he shall not be liable for any matter considered at that meeting on which he has not case a vote as provided by the foregoing sentence.

The certificate of one Employer Trustee and one Union Trustee or of the Administrator that the Board of Trustees has taken or authorized any action shall be conclusive in favor of any person relying on the certificate.

Section 2. RECORD OF TRUSTEES ACTIONS. The Trustees may select a Secretary to serve for a term of three (3) calendar years or until a successor has been duly elected. The Administrator, or in his absence a person appointed by the Trustees, shall prepare a draft of the minutes of each meeting and provide a copy to the Trustees as soon as practicable after the meeting is held. The Trustees will review and approve the minutes.

The Administrator shall act as the Fund's executive officer, with full power of administration under the general direction of the Trustees. The Trustees are specifically authorized to delegate to the Administrator any of the powers vested in the Trustees by this Agreement.

Section 3. ADMINISTRATIVE PERSONNEL. The Board of Trustees shall appoint the Administrator, actuary, Fund Counsel, auditor and such other managerial and legal and administrative staff as they deem reasonably necessary for the efficient administration of the Trust, and may delegate the appointment of Fund personnel to the Administrator.

Section 4. DISBURSEMENT OF RETIREE WELFARE FUND. The Administrator, or any other Retiree Welfare Fund employee designated by the Trustees, may sign checks for any disbursement from the Retiree Welfare Fund approved by the Trustees.

Section 5. EXECUTION OF NOTICES AND DOCUMENTS. Except as specifically provided in Section 4 next above, the Board of Trustees may designate any equal number of Union Trustees and Employer Trustees to jointly execute, in writing, on behalf of the Board of Trustees, any notice or document, which executed notice or document shall be conclusive in favor of any person relying thereon.

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1. IN GENERAL. In order to fund the retiree benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable

Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Retiree Welfare Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit

fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Retiree Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

13

## Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a) EMPLOYER OWNED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employers and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b) EMPLOYER OPERATED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c) PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION. The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employers with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provision of subsection (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employers, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

14

(d) MISCELLANEOUS PROVISIONS. The bond reference in the Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer.

## ARTICLE VII
### FILING CLAIMS AND REVIEW OF DENIAL OF CLAIM

Section 1. FILING OF A CLAIM. Claims for the payment of any retiree benefits shall be filed, in writing, via common carrier, U.S. mail or electronic mail, in accordance with the Rules and Regulations of the Retiree Welfare Fund.

Section 2. ADJUDICATION OF CLAIMS AND APPEALS. The Trustees shall have the authority to adopt procedures for the review of claims and appeals of claims denied in whole or in part in accordance with ERISA and regulations adopted pursuant to ERISA. The Trustees have delegated authority to decide claims to the Claims Department and to decide appeals to the Claims Committee of the Board of Trustees. The procedures may be changed from time to time at the discretion of the Board of Trustees. The current procedures for claims and appeals are set forth in the Summary Plan Description of the Retiree Welfare Fund.

The Trustees and/or the Claims Committee have full discretionary authority to determine eligibility for Benefits under the Plan and to interpret the Plan, all Plan documents, rules, procedures, and the terms of the Trust Agreement. Their decisions and interpretations will be given the maximum deference permitted by law for the exercise of such full discretionary authority, they will be binding upon all involved persons.

## ARTICLE VIII
### DUTY TO COOPERATE

All of the Trustees and all directors, officers, employees or other representatives of any Employer Association or Council party to this agreement shall be required to assist and cooperate with authorized representatives of the Retiree Welfare Fund, its attorneys, auditors, or other authorized representatives in the prosecution of claims for or against the Retiree Welfare Fund.

Specifically, an Employer shall provide to the Board of Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the records set forth in the Policy for Retention and Production of Employer Records attached hereto as Addendum A.

HARD SURFACE CONTRACTORS, LLC
10430 268TH AVE.
TREVOR, WI 53179

EMPLOYER #35357

JANUARY 1, 2014 – DECEMBER 31, 2014



EXHIBIT

A-6



**BK** BANSLEY AND KIENER, L.L.P.
CERTIFIED PUBLIC ACCOUNTANTS

O'HARE PLAZA
8745 WEST HIGGINS ROAD    TEL: (312) 263-2700
SUITE 200                 FAX: (312) 263-6935
CHICAGO, ILLINOIS 60631    WWW.BK-CPA.COM

April 13, 2017

Board of Trustees
Pension and Welfare Funds of Construction and General
    Laborers' District Council of Chicago and Vicinity
11465 Cermak Rd.
Westchester, IL 60154

We have applied certain procedures, as discussed below, to the payroll records of Hard Surface Contractors, LLC, a contributing employer to the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, for the period January 1, 2014 to December 31, 2014. The purpose of our review was to assist you in determining whether contributions to the Trust Funds are being made in accordance with the collective bargaining agreement in effect and with the Trust Agreement of the Fund. The propriety of the contributions is the responsibility of the employer's management.

Our procedures generally include a review of the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to Fund contribution records. The employer records we review may include payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, and general disbursement records. The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Fund. Any compensation paid to employees not disclosed to us or made part of the written record is not determinable by us and is not included in our review. Any findings are not based upon observations of employees doing actual work.

Our procedures relate to a review of the employer's payroll records only and do not extend to any financial statements of the contributing employer. The procedures were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed.

The exceptions to employer contributions are noted on the accompanying report.




The findings of this report should not be construed as an endorsement or ratification of any of the company's contribution practices. The finding is based solely on those documents that the employer provided to the auditors. This firm has not been retained to provide, and does not provide, any interpretation or advice concerning any terms of the collective bargaining agreement between the company and the Union or the terms of the Funds' respective Agreement and Declarations of Trust. All questions concerning the company's contribution practices, or any contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an exception to any of the employer's contribution practices should be construed as a ratification of such practice or waiver of the Union or the Funds' ability to challenge such practice in the future.

This report is not a determination of withdrawal liability owed under the Multi-Employer Pension Plan Amendments Act, 29 U.S.C. Section 1101, et al.

*Bansley and Kiener, L.L.P.*

BANSLEY and KIENER, L.L.P.
Certified Public Accountants

# Laborers' District Council

## Reconciliation of Differences Per Year

| Fiscal Year Ending | | | | 5-31 2014 | 5-31 2015 | Total Due |
|---|---|---|---|---|---|---|
| **Hours Not Reported** | | | | 0.00 | 1,299.00 | 1,299.00 |
| **Hours - Men Not Reported** | | | | 0.00 | 16.00 | 16.00 |
| **Wages Not Reported** | | | | 0.00 | 53,798.50 | 53,798.50 |
| | | | | | | |
| **Dollar Amount Due** | | | | | | |
| | | | | | | |
| Welfare | | | | 0.00 | 13,123.71 | 13,123.71 |
| Retiree Welfare Prefunding | | | | N/A | 4,997.00 | 4,997.00 |
| Pension | | | | 0.00 | 13,307.80 | 13,307.80 |
| Training | | | | 0.00 | 657.51 | 657.51 |
| IAF | | | | 0.00 | 92.06 | 92.06 |
| CISCO | | | | 0.00 | 13.16 | 13.16 |
| LECET | | | | 0.00 | 92.06 | 92.06 |
| LMCC | | | | 0.00 | 157.80 | 157.80 |
| Working Dues | | | | 0.00 | 1,748.46 | 1,748.46 |
| **Total** | | | | 0.00 | 34,189.56 | 34,189.56 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | **0.00** |
| Plus previous underpayments incurred to Laborers' District Council Funds | **0.00** |
| Plus previous penalties incurred to Laborers' District Council Funds | **0.00** |
| Audit Fee | 1,338.75 |
| **Total Amount Due** | **35,528.31** |

| | | | |
|---|---|---|---|
| Employer Name – | HARD SURFACE CONTRS., LLC | Person Contacted – | N/A |
| Employer – | 35357 | Date of Contact – | N/A |
| Date of Audit – | N/A | Telephone – | 847-757-8390 |
| Audit Period – | JAN. 1, 2014 - DEC. 31, 2014 | Auditor – | DANIEL TIMM |

3

# Laborers' District Council
## Reconciliation Between Actual and Reported Hours

| SS# | Name | Rate | Jun | Jul | Aug | 2014 Sep | Oct | Nov | Dec | 2015 Jan | Feb | Mar | Apr | May | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | ARROYO, FIDEL |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 207.00 | 126.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 333.00 |
|  | CORVEA, OMAR |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 19.50 |
|  | FIGUEROA, VICTOR |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 57.75 |
|  | GILLEY, ADAM |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64.00 |
|  | GILLEY, JEREMY |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 162.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 162.00 |
|  | GLORIA, CARLOS |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 |
|  | KOUBA, ADAM |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 |
|  | NORIEGA, MANUEL |  | 0.00 | 0.00 | 0.00 | 0.00 | 10.50 | 131.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 261.50 |
|  | PANDZIC, DZEVAD |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17.00 |
|  | SANTIAGO, REINALDO |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 76.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 76.50 |
|  | STEFFENS, STANLEY |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 16.00 |
|  | VAUGHN, DAVID |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.00 |
|  | ZUKAS, STEPHEN |  | 0.00 | 0.00 | 0.00 | 15.75 | 0.00 | 155.50 | 112.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 283.75 |
|  | Total |  | 0.00 | 0.00 | 0.00 | 15.75 | 10.50 | 922.25 | 366.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,315.00 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare | $9.98 | 0.00 | 0.00 | 0.00 | 157.19 | 104.79 | 9,204.06 | 3,657.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,123.71 |
| Retiree Welfare Prefunding | $3.80 | 0.00 | 0.00 | 0.00 | 59.85 | 39.90 | 3,504.55 | 1,392.70 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,997.00 |
| Pension | $10.12 | 0.00 | 0.00 | 0.00 | 159.39 | 106.26 | 9,333.17 | 3,708.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,307.80 |
| Training | $0.50 | 0.00 | 0.00 | 0.00 | 7.88 | 5.25 | 461.13 | 183.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 657.51 |
| IAF | $0.07 | 0.00 | 0.00 | 0.00 | 1.10 | 0.74 | 64.56 | 25.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 92.06 |
| CISCO | $0.01 | 0.00 | 0.00 | 0.00 | 0.16 | 0.11 | 9.22 | 3.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13.16 |
| LECET | $0.07 | 0.00 | 0.00 | 0.00 | 1.10 | 0.74 | 64.56 | 25.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 92.06 |
| LMCC | $0.12 | 0.00 | 0.00 | 0.00 | 1.89 | 1.26 | 110.67 | 43.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 157.80 |
| Working Dues | 3.25% | 0.00 | 0.00 | 0.00 | 19.45 | 12.97 | 1,263.41 | 452.63 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,748.46 |
| Total | | 0.00 | 0.00 | 0.00 | 408.01 | 272.02 | 24,015.33 | 9,494.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34,189.56 |

| | | | |
|---|---|---|---|
| Employer Name - HARD SURFACE CONTRS., LLC | | Person Contacted - | N/A |
| Employer - 35357 | | Date of Contact - | |
| Date of Audit - N/A | | Telephone - | 847-757-8390 |
| Audit Period - JAN. 1, 2014 - DEC. 31, 2014 | | Auditor - | DANIEL TIMM |

**Note: Contributions were never received for bolded employees.

# Laborers' District Council

## Reconciliation Between Actual and Reported Gross Wages

| SS# | Name | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total Wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2014 | | | | 2015 | | | | | |
| | ARROYO, FIDEL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,436.00 | 4,788.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,224.00 |
| | CORVEA, OMAR | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 807.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 807.50 |
| | FIGUEROA, VICTOR | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,793.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,793.00 |
| | GILLEY, ADAM | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,432.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,432.00 |
| | GILLEY, JEREMY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,391.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,391.00 |
| | GLORIA, CARLOS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 304.00 | 304.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 304.00 |
| | KOUBA, ADAM | 0.00 | 0.00 | 0.00 | 0.00 | 399.00 | 5,861.50 | 4,560.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10,820.50 |
| | NORIEGA, MANUEL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 665.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 665.00 |
| | PANDZIC, DZEVAD | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,135.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,135.00 |
| | SANTIAGO, REINALDO | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 608.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 608.00 |
| | STEFFENS, STANLEY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 304.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 304.00 |
| | VAUGHN, DAVID | 0.00 | 0.00 | 0.00 | 598.50 | 0.00 | 0.00 | 4,275.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 11,010.50 |
| | ZUKAS, STEPHEN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,137.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,137.00 |
| | **Total** | 0.00 | 0.00 | 0.00 | 598.50 | 399.00 | 38,874.00 | 13,927.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 53,798.50 |

Rate - 3.25% of gross wages

| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | | 0.00 | 0.00 | 0.00 | 19.45 | 12.97 | 1,263.41 | 452.63 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,748.46 |

| | | |
|---|---|---|
| Employer Name - HARD SURFACE CONTRS., LLC | Person Contacted - | N/A |
| Employer - 35357 | Date of Contact - | N/A |
| Date of Audit - N/A | Telephone - | 847-757-8390 |
| Audit Period - JAN. 1, 2014 – DEC. 31, 2014 | Auditor - | DANIEL TIMM |

**BANSLEY & KIENER, L.L.P.**
**PAYROLL AUDIT INFORMATION SHEET**

| | | | |
|---|---|---|---|
| EMPLOYER'S NAME | HARD SURFACE CONTRACTORS, LLC | EMPLOYER # | 35357 |
| ADDRESS | 10430 268TH AVE. | PHONE # | 847-757-8390 |
| CITY/STATE/ZIP | TREVOR, WI 53179 | FEIN # | |
| DATE OF CONTACT | N/A | AUDIT PERIOD | 1/1/14 - 12/31/14 |
| CONTACT'S NAME | N/A | TITLE | N/A |
| PERSON FUND IS TO CONTACT | N/A | TITLE | N/A |
| ENTITY TYPE | LLC | FIELD REP. | JIM FOSCO |
| BUSINESS ACTIVITY | ASPHALT & CONCRETE CONSTRUCTION | | |
| AVERAGE NUMBER OF EMPLOYEES | | 47 | |
| AVERAGE NUMBER OF LABORERS | | 27 | |

| OWNERSHIP-PRINCIPALS | TITLE | % | ADDRESS |
|---|---|---|---|
| RONALD D. JACKSON, JR. | MANAGER/OWNER | 100% | |

BANKING FACILITIES USED AND ACCOUNT NO.    CHASE BANK

DOES EMPLOYER HAVE INTEREST IN OTHER OPERATIONS?

☐ YES    ☒ NO

IF YES, LIST NAMES OF SAME    N/A

IS EMPLOYER A MEMBER OF ANY TRADE ORGANIZATION/ASSOCIATION?

☐ YES    ☒ NO

IF YES, LIST NAMES OF SAME    N/A

**BANSLEY & KIENER, L.L.P.**
**PAYROLL AUDIT INFORMATION SHEET**

AUDIT DATE                                      N/A

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS):          BANSLEY & KIENER, L.L.P.

CHICAGO, IL 60631

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF:          THE PAYROLL RECORDS

PROVIDED INCLUDED ONLY GROSS WAGES AND NOT HOURS. THE HOURS WERE BACKED INTO.

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY:          THE EMPLOYER IS DELINQUENT TO THE

FUNDS IN NOVEMBER AND DECEMBER 2014. THE OTHER DEFICIENCIES APPEARED TO BE CLERICAL ERRORS.

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO THE
ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?

☐ YES          ☒ NO

IF YES, EXPLAIN:          N/A

AUDITOR:          DANIEL TIMM

# LABORERS' PENSION & WELFARE FUNDS

## SUMMARY OF AMOUNTS OWED

AUDIT 1-1-14 - 12-31-14

EMPLOYER  HARD SURFACE CONTRACTORS, LLC

FIELD REP  JF

CODE  35357

| PERIOD | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDC/LMCC | RATE | LECET | RATE | CISCO | RATE | LIAF | RATE | TOTAL | RATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1,315.00 |  | 9.98 |  | 3.80 |  | 10.12 |  | 0.50 |  |  | 0.12 |  | 0.07 |  | 0.01 |  | 0.06 |  | 0.07 |
| 6/1/14-5/31/15 | 1,315.00 | 13,123.71 |  | 4,997.00 |  | 13,307.80 |  | 657.51 |  | 1,748.46 | 157.80 |  | 92.06 |  | 13.16 |  | 92.06 |  | 34,139.56 |  |
| SUBTOTAL |  | 13,123.71 |  | 4,997.00 |  | 13,307.80 |  | 657.51 |  | 1,748.46 | 157.80 |  | 92.06 |  | 13.16 |  | 92.06 |  | 34,139.56 |  |
| PMT Received |  | (13,123.71) |  | (4,997.00) |  | (13,307.80) |  | (657.51) |  | (1,748.46) | (157.80) |  | (92.06) |  | (13.16) |  | (92.06) |  | (34,139.56) |  |
| 10% LIQUIDATED DAMAGES |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | 199.84 |  |
| 20% LIQUIDATED DAMAGES |  | 2,624.74 |  | 999.40 |  | 2,661.56 |  | 131.50 |  | 174.85 | 15.78 |  | 9.21 |  | 2.63 |  | 18.41 |  | 6,438.24 |  |
| AUDIT COSTS | | 334.69 |  | 334.69 |  | 669.37 |  |  |  |  |  |  |  |  |  |  |  |  | 1,338.75 |  |
| PMT Received |  | (202.61) |  | (202.61) |  | (405.22) |  |  |  |  |  |  |  |  |  |  |  |  | (810.44) |  |
| ATTORNEY FEES |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| ACCUM. LIQUIDATED DAMAGES |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| ACCUM. INTEREST |  | 5,931.61 |  | 2,258.53 |  | 6,014.81 |  | 297.13 |  |  | 71.32 |  | 41.61 |  | 5.95 |  | 41.61 |  | 14,662.62 |  |
| TOTAL DUE |  | 8,638.43 |  | 3,390.01 |  | 8,940.52 |  | 428.68 |  | 174.85 | 87.10 |  | 50.82 |  | 8.58 |  | 60.02 |  | 21,829.01 |  |

Original Audit Billed:   56,829.01
Less Payments Received:  (35,000.00)
Remaining Balance:       21,829.01


EXHIBIT A-7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND,                         )
LABORERS' WELFARE FUND OF THE                   )
HEALTH AND WELFARE DEPARTMENT                   )
OF THE CONSTRUCTION AND GENERAL                 )
LABORERS' DISTRICT COUNCIL OF                   )
CHICAGO AND VICINITY, THE CHICAGO               )
LABORERS' DISTRICT COUNCIL RETIREE              )
HEALTH AND WELFARE FUND, and                    )
CATHERINE WENSKUS, Administrator                )
of the Funds,                                   )
                                                )
                          Plaintiffs,           )       Case No.:  15 C 2333
                                                )
        v.                                      )
HARD SURFACE CONTRACTORS, LLC,                  )       Judge Ellis
an Illinois limited liability corporation,      )
RONALD D. JACKSON, JR., individually,           )
and HARD SURFACE SOLUTIONS, INC.,               )
an Illinois corporation also D/B/A              )
SEAL-KOTE SERVICES,                             )
                                                )
                          Defendants.           )

## DECLARATION OF PATRICK T. WALLACE

I, PATRICK T. WALLACE, declare and state as follows:

1.      I am Fund Counsel for Plaintiffs Laborers' Pension Fund and Laborers' Welfare

Fund of the Health and Welfare Department of the Construction and General Laborers' District

Council of Chicago and Vicinity (the "Laborers' Funds"), Plaintiffs in the above-referenced

action. This Declaration is submitted in support of the Laborers' Funds' Motion for Entry of

Default Judgment in Sum Certain.

2.      Shareholders of the law firms of Allison, Slutsky & Kennedy, out-of-house

collection counsel for the Laborers' Funds, bill the Laborers' Funds at a rate of $225.00 per hour

for shareholders, $195.00 per hour for associates, and $110.00 per hour for paralegals. Affiant,



EXHIBIT
B

as in-house counsel for the Laborers' Funds, has first-hand knowledge that the foregoing hourly rates have been found reasonable and have been awarded by many courts in collection proceedings.

3.    I received a Bachelor of Arts Degree from the University of Illinois at Urbana-Champaign in 1992 and a Juris Doctor Degree from the University of DePaul College of Law in 1995. I was admitted to the bar of the State of Illinois in November 1995 and to the bar of the United States District Court for the Northern District of Illinois in December 1995. I have also been admitted to the bar of the United States District Court for the Central District of Illinois. I was admitted to the Trial Bar of the Northern District of Illinois on September 20, 2000. From November 1995 to August 2000 I practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur & Eagle). In September 2000, I became Funds Counsel for the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

4.    Based on the foregoing, $225.00 represents a fair and reasonable market rate for my in-house legal services to the Funds in this matter.

5.    Amy Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

2

6. Based on the foregoing, $225.00 represents a fair and reasonable market rate for Amy Carollo's in-house legal services to the Funds in this matter.

7. G. Ryan Liska, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from University of Iowa in 1997 and a Juris Doctor from John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in November of 2002 and to the bar of the United States District Court for the Northern District in December of 2002. In March 2006, he was admitted to the bar of the United States District Court for the Central District of Illinois. From 2002 to September 2016 he practiced labor and employment law at various law firms. In October of 2016, he became in-house counsel for the Laborers' Funds.

8. Based on the foregoing, $225.00 represents a fair and reasonable market rate for G. Ryan Liska's in-house legal services to the Funds in this matter.

9. Katherine Mosenson, in-house counsel for the Chicago Funds, received a Bachelor of Science Degree from the University of Illinois at Urbana-Champaign in 2009 and a Juris Doctor Degree from the John Marshall Law School in 2014. She was admitted to the bar of the State of Illinois in May, 2014, and to the bar of the United States District Court for the Northern District of Illinois in May 2015. From November 2014 through April 2015, she was an administrative law judge at the Illinois Labor Relations Board. In May 2015, she became in-house counsel for the Funds.

10. Based on the foregoing, $195.00 represents a fair and reasonable market rate for Katherine Mosenson's in-house legal services to the Funds in this matter.

11. Kelly Carson, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Purdue University in 2005 and a Juris Doctor Degree from Chicago-Kent College of Law in 2013. She was admitted to the bar of the State of Illinois in May 2014 and to

3

the bar of the United States District Court for the Northern District of Illinois in August 2015. In August 2015, she became in-house counsel for the Laborers' Funds.

12.     Based on the foregoing, $195.00 represents a fair and reasonable market rate for Kelly Carson's in-house legal services to the Funds in this matter.

15.     Exhibit 1 attached hereto sets forth the time expended to date by Fund Counsel on this matter. As set forth in that Exhibit, we have expended 84.30 hours totaling $18,063.50 in attorneys' fees and $1,179.70 in expenses totaling $19,243.20, less $2,183.75 previously awarded, representing a difference of $17,079.45.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.


Date: _April 23 2018_                          _Patrick T. Wallace_
                                               Patrick T. Wallace

4

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL 60154


Invoice submitted to:
Hard Surface Contractors, LLC


April 23, 2018

Invoice #10279

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 3/11/2015 | PTW | Telephone conference with J. Fosco re: new suit; drafted Complaint. | 1.00 225.00/hr | 225.00 |
| 3/18/2015 | PTW | Drafted Complaint; Telephone conference with KT; update report. | 2.00 225.00/hr | 450.00 |
| 3/26/2015 | PGL | Preparation of draft Initial Status Report. | 0.50 110.00/hr | 55.00 |
| 3/27/2015 | PTW | Telephone conference with J. Fosco; Telephone conference with contractor; Telephone conference with J. Fosco; Conference with JJ; Conference with JF. | 1.30 225.00/hr | 292.50 |
| 3/31/2015 | PTW | Drafted Amended Complaint. | 0.50 225.00/hr | 112.50 |
| 4/30/2015 | PTW | Review of file; memo to KT. | 0.20 225.00/hr | 45.00 |
| 5/7/2015 | KM | Review of file with PTW. | 0.40 195.00/hr | 78.00 |
| 5/8/2015 | KM | Review of pleadings per PTW. | 1.00 195.00/hr | 195.00 |
| 5/12/2015 | PGL | Preparation of draft Order, Notice of Motion, Exhibits, Affidavit of J. Fosco, etc. for Motion for Entry of Default Judgment. | 0.50 110.00/hr | 55.00 |
| | PTW | Edits to Motion and Order. | 0.20 225.00/hr | 45.00 |



EXHIBIT
B-1

Hard Surface Contractors, LLC

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 5/12/2015 | PTW | Edits to Motion for Entry of Default Judgment; review of fees. | 0.40 225.00/hr | 90.00 |
| | PTW | Drafted Motion for Entry of Default Judgment; edits to Affidavit of J. Fosco. | 1.30 225.00/hr | 292.50 |
| 5/18/2015 | PTW | Review of bankrtupcy case; Telephone conference with Debotr's Counsel; review of petition; preparation of of Notice of Suggestion of Bankruptcy; edits. | 0.70 225.00/hr | 157.50 |
| 5/19/2015 | PTW | Appearance before Judge Ellis; memo to file re: same; letter to BK attorney re: secured status; edits to letter. | 1.50 225.00/hr | 337.50 |
| 6/30/2015 | KM | Conference with PTW re: bankruptcy case and 341 meeting; review of file. | 0.80 195.00/hr | 156.00 |
| | KM | Review file for 341 meeting; attend 341; Conference with PTW. | 1.90 195.00/hr | 370.50 |
| | PTW | Conference with KV re: 341. | 0.30 225.00/hr | 67.50 |
| 7/8/2015 | PGL | Transcribed memo dictation re: case status & phone call w/Trustee Phil Martino | 0.10 110.00/hr | 11.00 |
| | KM | BK abandonment research, discuss w/ Christina K. Wernick; meet with Patrick Wallace to discuss findings, listen in on phone call w/ Trustee, Called Jean Mashos to schedule audit, letter to Dan Timm re: scheduling the audit; email to debtor's attorney, had Patrick Wallace & Christina Wernick review my letters & emails | 3.20 195.00/hr | 624.00 |
| | CKW | Conference w/Kate Vanek & Patrick Wallace re: Motion to Abandon, Research re: same, phone conference w/Trustee Phil Martino re: same, memo | 0.90 225.00/hr | 202.50 |
| | PTW | Conference with KV; Appearance before Judge Ellis; memo to file re: same; Conference with CKW and KV. | 1.20 225.00/hr | 270.00 |
| 7/9/2015 | KM | Phone call w/ Dan Timm; discussed call with Patrick Wallace; drafted 2004 motion, edit motion, work w/Karen Tarjan on draft order | 1.30 195.00/hr | 253.50 |
| | PTW | Conference with KV and CKW re: bankruptcy. | 0.50 225.00/hr | 112.50 |
| 7/13/2015 | KM | Research UCC Title IX security, Interest exception to titled vehicles discuss w/CKW | 1.70 195.00/hr | 331.50 |
| 7/24/2015 | PTW | Review of amended schedules; letter to counsel. | 0.20 225.00/hr | 45.00 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/2/2015 | PTW | Appearance before Judge Ellis; memo to file re: same; preparation of Order. | 1.50 225.00/hr | 337.50 |
| 10/8/2015 | PGL | Preparation of draft Proof of Claim. | 0.20 110.00/hr | 22.00 |
| 10/9/2015 | PTW | Preparation of and edits to Proof of Claim; letter to counsel re: discovery. | 1.40 225.00/hr | 315.00 |
| 11/10/2015 | PTW | Appearance before Judge Baer; memo to file re: same. | 0.90 225.00/hr | 202.50 |
| 11/19/2015 | PTW | Review of email; drafted letter to Trustees; Telephone conference with KT. | 0.40 225.00/hr | 90.00 |
| 11/24/2015 | PTW | Review of pleadings; preparation for motion. | 0.30 225.00/hr | 67.50 |
| | PTW | Appearance before Judge Baer; memo to file re: same. | 1.50 225.00/hr | 337.50 |
| 12/14/2015 | PTW | Telephone conference with Colleen; memo to file re: same. | 0.20 225.00/hr | 45.00 |
| 12/15/2015 | PTW | Telephone conference with P. Martino; Conference with KC and KM; Telephone conference with CKW. | 0.50 225.00/hr | 112.50 |
| 12/21/2015 | KC | drafted amended proof of claim; locate new form | 0.70 195.00/hr | 136.50 |
| 12/29/2015 | PGL | Preparation of Exhibits for Amended Proof of Claim. | 0.10 110.00/hr | 11.00 |
| | KC | Revise amended proof of claim and file | 0.40 195.00/hr | 78.00 |
| | PTW | Review of Proof of Claim; Telephone conference with KMC. | 0.40 225.00/hr | 90.00 |
| 12/30/2015 | PTW | Telephone conference with P. Martini; letter to P. Martini. | 0.30 225.00/hr | 67.50 |
| 1/5/2016 | KC | Telephone conference with PTW re: status; review bankruptcy petitions; research conversion of chapter 13 to chapter 7 bankruptcy | 0.70 195.00/hr | 136.50 |
| | PTW | Telephone conference with Milwaukee Trustee; memo to file re: same; Telephone conference with KMC. | 0.70 225.00/hr | 157.50 |
| 1/6/2016 | KC | bankruptcy research re: conversion form chapter 13 to chapter 7 | 1.90 195.00/hr | 370.50 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 1/8/2016 | KC | Bankruptcy research re: converting from Chapter 13 to 7 | 0.40 195.00/hr | 78.00 |
| 1/26/2016 | PTW | Telephone conference with bankruptcy trustee; memo to file re: same. | 0.30 225.00/hr | 67.50 |
| 1/29/2016 | PTW | Conference with JJ> Telephone conference with  J. Sullivan; letter to J. Sullivan. | 0.60 225.00/hr | 135.00 |
| 2/3/2016 | PTW | Telephone conference with J. Sweetland; email to JJ. | 0.10 225.00/hr | 22.50 |
| 2/4/2016 | PTW | Letter to J. Sweetland re: retainer; emails to and from L. Gallagher and J. Jorgensen. | 0.30 225.00/hr | 67.50 |
| 2/16/2016 | PTW | Appearance before Judge Ellis; memo to file re: same; telephone call to J. Sweetland. | 1.00 225.00/hr | 225.00 |
| 2/25/2016 | PTW | Telephone conference with J. Sweetland; memo to file re: same. | 0.30 225.00/hr | 67.50 |
| 3/8/2016 | PTW | Appearance before Judge Baer; memo to file re: same. | 0.40 225.00/hr | 90.00 |
| 4/4/2016 | PTW | Appearance before Judge Baer; memo to file re: same. | 1.20 225.00/hr | 270.00 |
| 4/8/2016 | PTW | Telephone conference with CKW; Conference with JJ and JM; Telephone conference with M. Duffee; telephone call to CKW. | 0.50 225.00/hr | 112.50 |
| 4/21/2016 | PTW | Telephone conference with J. Lipinsky. | 0.30 225.00/hr | 67.50 |
| 5/5/2016 | KC | review docket; meeting with PTW | 0.30 195.00/hr | 58.50 |
| 5/9/2016 | KC | court appearance re: status; update status notes | 1.00 195.00/hr | 195.00 |
| 5/13/2016 | PTW | Preparation for deposition; review of documents; telephone call to counsel. | 1.50 225.00/hr | 337.50 |
| 5/16/2016 | PTW | Travel to Lisle; deposition; memo to file re: same. | 5.40 225.00/hr | 1,215.00 |
| 5/31/2016 | PTW | Review of deposition transcript; emails; Conference with C. Anderson. | 0.10 225.00/hr | 22.50 |
| 6/8/2016 | PTW | Review of exhibits; telephone call to counsel; email re: rescheduling. | 0.70 225.00/hr | 157.50 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 6/13/2016 | PTW | Email re: rescheduling. | 0.20<br>225.00/hr | 45.00 |
| 6/14/2016 | PTW | Emails re: scheduling; Appearance before Judge Baer; memo to file re: same; email confirming depositions. | 1.00<br>225.00/hr | 225.00 |
| 6/24/2016 | PTW | Telephone conference with J. Lipinski. | 0.10<br>225.00/hr | 22.50 |
| 6/27/2016 | PTW | Telephone conference with KT; review of email. | 0.10<br>225.00/hr | 22.50 |
| 6/28/2016 | PTW | Preparation for deposition; deposition of R. Jackson. | 4.00<br>225.00/hr | 900.00 |
| 7/6/2016 | PTW | Appearance before Judge Baer; memo to file re: same. | 0.70<br>225.00/hr | 157.50 |
| 7/19/2016 | PTW | Review of discovery; telephone call to R. Clarke. | 0.20<br>225.00/hr | 45.00 |
| 9/26/2016 | PTW | Email to R. Jackson; memo to file re: same. | 0.20<br>225.00/hr | 45.00 |
| 9/27/2016 | PTW | Review of email from J. Sweetland. | 0.10<br>225.00/hr | 22.50 |
| 10/5/2016 | PTW | Appearance before Judge Baer; memo to file re: same. | 1.00<br>225.00/hr | 225.00 |
| 12/14/2016 | PGL | Preparation of Notice of Motion. | 0.20<br>110.00/hr | 22.00 |
| | KC | research re: wage garnishments; memo to PTW | 1.40<br>195.00/hr | 273.00 |
| 1/3/2017 | PTW | Telephone conference with R. Clarke; memo to file re: same. | 0.20<br>225.00/hr | 45.00 |
| 1/5/2017 | PTW | Review of Order; letter to R. Clarke; Telephone conference with D. Timm. | 0.40<br>225.00/hr | 90.00 |
| 1/18/2017 | PTW | Telephone conference with D. Timm; Telephone conference with R. Clarke. | 0.40<br>225.00/hr | 90.00 |
| 1/19/2017 | PTW | Appearance before Judge Ellis. | 0.50<br>225.00/hr | 112.50 |
| 1/20/2017 | PTW | Letter to counsel. | 0.20<br>225.00/hr | 45.00 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 2/23/2017 | PTW | Telephone conference with D. Timm; Telephone conference with R. Clark; Appearance before Judge; memo to file re: same. | 1.20 225.00/hr | 270.00 |
| 3/21/2017 | PTW | Email re: settlement. | 0.10 225.00/hr | 22.50 |
| 4/6/2017 | PTW | Telephone conference with R. Clarke; Appearance before Judge Ellis; memo to file re: same; email to D. Timm. | 1.40 225.00/hr | 315.00 |
| 4/12/2017 | PTW | Telephone conference with D. Timm re: audit. | 0.10 225.00/hr | 22.50 |
| 5/1/2017 | PTW | Letter to R. Clarke; Telephone conference with KCB. | 0.50 225.00/hr | 112.50 |
| 5/19/2017 | PTW | Review of case. | 0.50 225.00/hr | 112.50 |
| 5/24/2017 | PTW | Telephone conference with J. Lipinski; letter to Lipinski; edits. | 1.00 225.00/hr | 225.00 |
| 5/25/2017 | PTW | Appearance before Judge Ellis; memo to file re: same. | 1.00 225.00/hr | 225.00 |
| 6/9/2017 | PTW | Telephone conference with counsel. | 0.10 225.00/hr | 22.50 |
| 6/14/2017 | PTW | Telephone conference with J. Lipinski; letter. | 0.30 225.00/hr | 67.50 |
| 7/14/2017 | PTW | Drafted Motion; preparation of Amended Complaint; Telephone conference with R. Clarke; Telephone conference with clerk; Telephone conference with R. Clarke; forwarded email to KT. | 2.00 225.00/hr | 450.00 |
| 7/25/2017 | PTW | Telephone conference with CKW and MF; review of offer; email to KT. | 0.50 225.00/hr | 112.50 |
| 7/26/2017 | PTW | Preparation of amended complaint; letter to counsel. | 0.50 225.00/hr | 112.50 |
| 8/23/2017 | PTW | Telephone call to counsel. | 0.10 225.00/hr | 22.50 |
| 8/25/2017 | PTW | Review of email. | 0.10 225.00/hr | 22.50 |
| 10/25/2017 | PTW | Appearance before Judge Ellis; memo to file re: same; review of numbers; email to counsel. | 1.40 225.00/hr | 315.00 |
| 11/22/2017 | PGL | Preparation of draft Initial Disclosures and exhibits; interrogatories and document requests. | 1.00 110.00/hr | 110.00 |

| Date | | Description | Hrs/Rate | Amount |
|------|---|-------------|----------|--------|
| 11/22/2017 | PTW | 26(a)(1) Disclosures. | 0.50<br>225.00/hr | 112.50 |
| 11/30/2017 | PTW | Discovery; telephone call to counsel. | 1.20<br>225.00/hr | 270.00 |
| 12/1/2017 | PTW | Telephone conference with counsel. | 0.10<br>225.00/hr | 22.50 |
| 1/8/2018 | PTW | Telephone conference with counsel. | 0.10<br>225.00/hr | 22.50 |
| 2/8/2018 | PTW | Telephone conference with  counsel. | 0.10<br>225.00/hr | 22.50 |
| 2/13/2018 | PTW | Review of receivables; drafted letter to CW; drafted Motion. | 1.40<br>225.00/hr | 315.00 |
| 2/15/2018 | PTW | Conference with CW: edits to letter; Telephone conference with KT. | 0.50<br>225.00/hr | 112.50 |
| 2/27/2018 | PTW | Review of offer; letter to CW; Conference with CW; Telephone conference with  counsel. | 0.70<br>225.00/hr | 157.50 |
| 3/2/2018 | PTW | Telephone call to counsel. | 0.10<br>225.00/hr | 22.50 |
| 3/5/2018 | PTW | Telephone conference with counsel re: settlement. | 0.10<br>225.00/hr | 22.50 |
| 3/7/2018 | PTW | Telephone conference with counsel; Telephone conference with CW; Telephone conference with counsel; email. | 0.50<br>225.00/hr | 112.50 |
| 3/12/2018 | PTW | Drafted Settlement Agreement. | 0.60<br>225.00/hr | 135.00 |
| 3/13/2018 | PTW | Edits to Settlement Agreement; email to counsel. | 0.40<br>225.00/hr | 90.00 |
| 3/20/2018 | PTW | Review of edits; email; motion to substitute, stipulation to dismiss. | 0.80<br>225.00/hr | 180.00 |
| 4/2/2018 | PTW | Email to J. Fosco. | 0.10<br>225.00/hr | 22.50 |
| | PTW | Email to CW; Telephone conference with KT. | 0.10<br>225.00/hr | 22.50 |
| 4/4/2018 | PGL | Preparation of Motion for Entry of Default Judgment in Sum Certain, Order, Affidavit of Field Representative; preparation of Notice of Motion, Declaration of Fees, and exhibits. | 0.80<br>110.00/hr | 88.00 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 4/4/2018 | PTW | Emails; Conference with JF. | 0.30 225.00/hr | 67.50 |
| 4/5/2018 | PTW | Review of payment; letter to JF; memo to file re: same; edits; letter to counsel; review of motion. | 1.00 225.00/hr | 225.00 |
| 4/20/2018 | PTW | Drafted Motion for Entry of Default Judgment and Affidavit of J. Fosco. | 1.50 225.00/hr | 337.50 |
| 4/23/2018 | PTW | Edits to Motion for Entry of Default Judgment; draft Order; revie of fees. | 0.60 225.00/hr | 135.00 |
| | | For professional services rendered | 84.30 | $18,063.50 |

Additional Charges :

| | | |
|---|---|---|
| 3/18/2015 | Filing fee. | 400.00 |
| 3/19/2015 | Affidavit of Compliance fee. | 101.25 |
| 3/30/2015 | Service of Summons - R. Jackson. | 65.00 |
| 5/16/2016 | Deposition transcript of R. Jackson. | 300.60 |
| 7/8/2016 | Transcript of deposition of R. Jackson. | 243.85 |
| 8/22/2017 | Attempted service of Second Amended Complaint - pulled. | 69.00 |
| | Total additional charges | $1,179.70 |
| | Total amount of this bill | $19,243.20 |
| | Balance due | $19,243.20 |

### Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Christina Krivanek Wernic | 0.90 | 225.00 | $202.50 |
| Katherine Mosenson | 10.30 | 195.00 | $2,008.50 |
| Paralegal | 3.40 | 110.00 | $374.00 |
| Patrick T. Wallace | 62.90 | 225.00 | $14,152.50 |
| Kelly Carson | 6.80 | 195.00 | $1,326.00 |